## REYNOLDS v. UNITED STATES.
### No. 2912.

Circuit Court of Appeals, First Circuit.
Nov. 10, 1934.

Arthur Harrington, of Boston, Mass., for appellant.

Arthur J. B. Cartier, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

On the 6th day of September, 1933, Frank Melville Reynolds, setting himself up as a resident of Hull, Mass., filed with the clerk of the District Court for Massachusetts a petition for naturalization in the usual form, in which he stated that he was born in Charlestown, Boston, Mass., on May 26, 1885; that his last foreign residence was near Six Mile Lake, Canada; that he emigrated to the United States from Montreal, Quebec, Canada, through St. Albans, Vt., on August 27, 1914; that "it is my intention to become a citizen of the United States and to renounce absolutely and forever all allegiance and fidelity to any foreign prince, potentate, state or sovereignty, and particularly to George V * * * of whom at this time I am a subject."

This petition was filed without the usually required preliminary declaration of intention under the provisions of the Naturalization Act of May 9, 1918, as amended (8 USCA § 377), which allowed such filing when the petitioner had "resided uninterruptedly within the United States during the period of five years next preceding July 1, 1920," having during that time, in good faith, because of misinformation, regarded himself a citizen and exercised the rights and performed the duties of such citizen. In the affidavit required by the Department of Labor in such cases he gave the time and place of his birth as set out in the petition; that he believed that he was and continued to be a citizen of the United States "in view of my birth in this country"; that he continued to so believe until May, 1933, when the Registrars of Voters at Hull, Mass., removed his name from the list of eligible voters in Hull on the ground that he had "become a citizen of Canada, as a result of an application for Canadian citizenship claimed to have been made by me at

Prince Rupert, British Columbia, Canada, on or about October 20, 1913"; that he had exercised the following rights and duties of a citizen of the United States: "I was appointed Postmaster at the Nantasket Beach Post Office, Hull, Massachusetts, in February 1916, after having taken a Civil Service examination at Boston, Mass., in 1915. * * * I have served as Postmaster at the Nantasket Beach Post Office, Hull, Mass., from February 1916 until the present date."

When the petition came on for hearing in the District Court, counsel for the petitioner, in the petitioner's presence, requested the court to deny the petition upon the ground that the petitioner is now a citizen. Among the papers submitted at that time was a photostatic copy of a written oath of allegiance to Great Britain purporting to be, though not conceded by petitioner to be, signed by him. At a later hearing counsel for the petitioner requested the court to rule in substance that the petitioner is entitled to have his status determined by filing a petition for citizenship and having the petition denied at his request on the ground that he is already an American citizen. This request was denied and the petitioner excepted.

The court, in making a final disposition of the case, said:

"I am not prepared to say that a person has the right to file a naturalization petition, reciting that he is an alien, with the intent later to take the position that he is a citizen, and then have his petition denied upon such ground as he requests. It is urged that, unless this can be done there is no way in which a person may have his citizenship established, and that accordingly I ought to find the facts and pass upon a petition, the granting of which the petitioner at no time intended to urge. I find nothing in the Acts of Congress or in Judge Morton's decision [In re Mary Bates Fitzroy (D. C.) 4 F.(2d) 541] (which as before stated involved an application for leave to file a petition) which requires or warrants such a course. Nor do I feel that it is for the District Court to extend the Fitzroy Case, in view of Judge Morton's opinion, to cases not presenting the special and unusual circumstances there considered.

"Without passing upon the question whether the petitioner signed an oath of allegiance to Great Britain purporting to bear his signature, or the effect thereof, and without passing upon the matter of the petitioner's citizenship, the petition is denied on the broad ground that neither at the time it was filed nor at any other time has the petitioner really wanted to have it allowed."

As said by the Circuit Court for Massachusetts as far back as 1884, "the jurisdiction of the district court, in matters of naturalization, does not depend upon facts stated, but is derived from the statutes of the United States. Whether the court will grant naturalization papers in a given case depends upon the facts; but *it has jurisdiction over the matter* even if the facts be insufficient for a favorable result to the application." United States v. Walsh, 22 F. 644, 649.

The jurisdiction given the several courts to naturalize aliens involves the filing of a petition as an alien, and it is the duty of the court on the filing of such a petition to determine on all the evidence the facts on which the petition should be either allowed or denied, and to enter judgment accordingly. The applicant in this case did not withdraw his petition or ask to have it dismissed or disposed of other than on its merits, and we think that the judgment of the District Court denying it without passing upon the merits was erroneous. By his petition the applicant sought to establish his status [In re Grant (D. C.) 289 F. 814; Petition of Zogbaum (D. C.) 32 F.(2d) 911; In re Fitzroy (D. C.) 4 F. (2d) 541. See, also, In re Guliano (D. C.) 156 F. 420], whether he was a citizen or an alien and that the petition be dismissed or allowed as the fact was found to be. His request that on the evidence the court find he was a citizen and deny the petition was not improper and should not have been so regarded, for the requested finding and ruling would establish his status to be that of a citizen. As the chief issue raised by the petition was his status—a citizen or alien—the determination of the fact one way or the other should be stated in the judgment denying or granting the petition. Had it been determined that the applicant was an alien we cannot conceive that he would have desired any disposition of the petition other than to have it allowed.

The Fitzroy Case, supra, as reported in 4 F.(2d) 541, states that the petition of Mary Bates Fitzroy was "for admission to citizenship." The original records in the case show that it was a petition "for leave to file a petition for admission to citizenship," and the practice of allowing such a petition to be brought was supported on the opinion of Judge Hough in Re Guliano (D. C.) 156 F. 420, 421. The suggestion in the Fitzroy Case that the practice of allowing such a petition

to be brought "should be confined to special and unusual cases," had nothing to do with a straight petition for naturalization; and in the Guliano Case, where the petition was one for leave to file a petition for naturalization, it was held that there was nothing in the naturalization statute "forbidding a preliminary inquiry in cases where it is doubtful whether the applicant can truthfully verify a petition [for naturalization] giving him any hope of a successful issue," and that in such a case he should "be permitted to make a preliminary showing in this regard without the payment of the fees [considerable in amount] attaching to the filing of an application" for naturalization.

The decree of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.